# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL SHIFERAW (01),<br><br>    Defendant. | Case No. 19-20025-01-DDC |

## MEMORANDUM AND ORDER

On June 20, 2019, the court ordered defendant Michael Shiferaw to submit to a psychiatric or psychological evaluation to determine his competency to stand trial. Doc. 30. On August 15, 2019, the examiner provided her report. She concluded Mr. Shiferaw was competent to stand trial. Doc. 39 at 8–10. The court then held a competency hearing on September 5, 2019, and found Mr. Shiferaw competent to stand trial. Doc. 37. Specifically, the court found, based on a preponderance of the evidence, that Mr. Shiferaw "understand[s] the nature and consequences of the court proceedings against him and also that no present condition substantially impairs his ability to properly assist counsel and assist in his defense." Doc. 50 at 4 (Competency Hr'g Tr., 4:3–9).

Later, Mr. Shiferaw's counsel filed a Motion for Leave to Withdraw, advising the court that Mr. Shiferaw had "discharged counsel" and desired to proceed pro se in the case. Doc. 45. The court granted counsel's motion (Doc. 46). At a status conference on December 19, 2019, the court confirmed with Mr. Shiferaw that he intended to represent himself and questioned him at length about his decision to proceed pro se. Doc. 47. This colloquy explored Mr. Shiferaw's experience with the rules governing his case and with the mechanics of a trial. Mr. Shiferaw's

answers revealed that he possesses, at best, minimal understanding of or experience with trials and court proceedings more generally. Consequently, the court strongly advised Mr. Shiferaw against representing himself. The court told Mr. Shiferaw that, given his inexperience and lack of training, representing himself in a case with such high stakes is a dreadful idea.

Still, Mr. Shiferaw persisted. He confirmed that he knew he had a right to a lawyer. But, he said, he wanted to go it alone. The court thus concluded Mr. Shiferaw knowingly and intelligently had waived his right to counsel. The court then appointed standby counsel to advise Mr. Shiferaw, if he requested assistance. Doc. 48.

The court's finding about his knowing decision to waive counsel does not nullify the competency report's diagnosis of Mr. Shiferaw as Borderline Intellectual Functioning—and its blunt, negative assessment of his ability to reason, problem solve, and process information. So, the court has concerns about his competency to represent himself and it expressed those concerns at a status conference on January 23, 2020. There, Mr. Shiferaw reported that he had refused to meet with his standby counsel, even though counsel had traveled to the detention center where he is detained. Indeed, he refused to see counsel at all, even to accept delivery of the government's discovery. At the January 23 conference, Mr. Shiferaw informed the court that he did not intend to review the discovery the government tried to provide before trial. The court thus asked the government to file a brief outlining any concerns it held about Mr. Shiferaw's capacity to represent himself and, if appropriate, to suggest possible safeguards of his rights. The court directed the parties to the Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008) (permitting judges "to take realistic account of [a defendant's] mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so").

On January 30, 2020, the government responded to the court's requests. It filed a motion asking the court to order another psychiatric or psychological examination for Mr. Shiferaw under 18 U.S.C. § 4241.[1] Doc. 59. Specifically, the government cited *Edwards* and moved for this evaluation "to determine the defendant's mental competency to conduct his own defense at trial." *Id.* at 1. Mr. Shiferaw opposes the motion. His co-defendant takes no position.

Though this Order does not rule on the motion, the court generally agrees with the government's request. *Edwards*'s holding recognizes that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." 554 U.S. at 177–78. The government argues that Mr. Shiferaw's first competency examination merely assessed his competency to stand trial under 18 U.S.C. § 4241, *i.e.*, whether he is "suffering from a mental disease or defect rendering him mentally incompetent . . . to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Doc. 39 at 1 (sealed Forensic Evaluation dated Aug. 15, 2019, using statutory standard). The motion points out—correctly, in the court's view—that just because Mr. Shiferaw is competent to stand trial does not necessarily mean he is competent to represent himself. *Id.* at 3–4.

The government's motion recognizes the dichotomy now at issue. The earlier forensic evaluation assessed Mr. Shiferaw under the well-known standard codified by 18 U.S.C. § 4241. *See also Dusky v. United States*, 362 U.S. 402 (1960) (outlining the competency standard); *Drope v. Missouri*, 420 U.S. 162 (1975) (same). And while one can read some aspects of Mr.

---

[1] Title 18 U.S.C. § 4241(a) authorizes a court to order a competency exam "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

Shiferaw's evaluation to find that he might satisfy *Edwards*'s second level standard,[2] the court doesn't find those references dispositive. After all, the court tasked the first evaluator to answer a different question than the government's current motion now poses.

Based on the circumstances of this case, the court concludes that the government's motion correctly seeks a second evaluation that does not duplicate the first one. This conclusion doesn't suggest an evaluation is warranted in every case where the defendant in a criminal case elects to represent himself. But, where, as here, known circumstances create a real concern about a pro se defendant's mental fitness for the task ahead, an *Edwards* evaluation is appropriate.

The court also concludes that the government's motion leaves unresolved two significant issues about this second evaluation. First, granting the government's motion based on the current record wouldn't provide sufficient guidance about the purpose of a second evaluation. Below, in subsection A, the court addresses that uncertainty. And second, the government's motion assumes that the Bureau of Prisons would conduct this next evaluation. While this is one alternative, others deserve consideration. Subsection B initiates that discussion.

**A. What question should the evaluator answer?**

*Edwards* recognizes that states, without abridging the constitutional right to self-representation recognized in *Faretta v. California*, 422 U.S. 806 (1975), can "deny a gray-area defendant the right to represent himself" in a criminal proceeding. 554 U.S. at 174. The harder question, though, is what the Court means by this reference to a "gray-area defendant."

---

[2] The August 2019 Forensic Evaluation reported that there was "no evidence of severe mental illness" in Mr. Shiferaw. Doc. 39 at 5. Yet, the evaluation noted other experiences that raise plausible concerns about Mr. Shiferaw's mental well-being. *See id.* at 4 (referencing reports during Mr. Shiferaw's pretrial detention that "he apparently [had] attempted suicide," reported auditory hallucinations, and that he dismissed those concerns, responding, "Everyone does stuff like that in prison, [M]iss").

4

*Edwards* undoubtedly provides a measure of guidance. Near the end of the opinion, the Court summarized its holding: States properly can force counsel on a criminal defendant—and thus set aside a defendant's *Faretta* right when defendants are "competent enough to stand trial under *Dusky*" but "still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178. The court does not find more explicit guidance in *Edwards*, however. And so, the court turns to authority from our Circuit.

The Tenth Circuit has referenced *Edwards* a number of times. About nine months after the *Edwards* decision, the Circuit recognized this new precedent in *United States v. DeShazer*, 554 F.3d 1281 (10th Cir. 2009). But, the dispute at issue in *DeShazer* didn't require the Circuit to sharpen the standard *Edwards* had adopted. As the Circuit noted, the right to self-representation was not at stake in *DeShazer* because "the district court acceded to [defendant's] unopposed request" to represent himself. *Id.* at 1289. And so, *DeShazer* considered a different question: Had the district court applied the wrong standard to assess the defendant's competence to waive his right to counsel? *Id.* at 1288.

A later case from our Circuit again applied the *Edwards* ruling: *United States v. Pawelski*, 651 F. App'x 750, 764 (10th Cir. 2016). In one respect, *Pawelski* resembles *DeShazer* because the narrow issue in the appeal isn't the one facing the court in this case. Instead, *Pawelski* considered whether the district court had erred because it hadn't revoked defendant's right of self-representation. And yet, a key component of the Circuit's analysis does illuminate *Edwards*—at least somewhat. The Circuit held that the district court hadn't erred because defendant hadn't shown she suffered from a severe mental illness. *Id.*

The court also considers rulings by other Circuit Courts of Appeals. The Seventh Circuit directly addressed the question at issue here in *United States v. Berry*, 565 F.3d 385 (7th Cir.

2009). *Berry* concluded that "*Edwards* does seem to cap a trial court's ability to foist counsel upon the unwilling. 'Severe mental illness' appears to be a condition precedent." *Id.* at 391. The Seventh Circuit also observed that *Edwards* "repeatedly cabined its holding with phrases like 'mental derangement,' 'gray-area defendant,' [and] 'borderline-competent criminal defendant . . . .'" *Id.* (quoting *Edwards*, 554 U.S. at 171, 173, 175). *Berry* concluded with this observation: "Nothing in the [*Edwards*] opinion suggests that a court can deny a request for counsel in the absence of [severe mental illness]." *Id.*

The court finds *Berry* persuasive and believes it is faithful to *Edwards*'s essential holding. Its reasoning also tracks *Pawelsky*. The court thus predicts that our Circuit would adopt a substantially similar approach.

Consistent with *Berry*, the court suggests the following question for the evaluator who will evaluate Mr. Shiferaw's "competen[ce] to conduct trial proceedings by" himself:

> An earlier Forensic Evaluation concluded that Mr. Shiferaw's symptoms do not substantially impair his present ability to: (a) understand the nature and consequences of the court proceedings against him; or (b) assist counsel properly in a defense of those proceedings. Mr. Shiferaw now plans to represent himself in those proceedings, which includes management of pretrial matters and a federal court jury trial. **Does he suffer a severe form of mental illness such that he is not competent to conduct trial proceedings by himself?**

In the court's judgment, this question asks the question framed by *Edwards*.[3]

---

[3] Given the limited authority and scholarship available on this question, the court is reluctant to assign a detailed scientific standard for the evaluator to apply. Drawing from the available literature, however, the court suggests that the examiner evaluate Mr. Shiferaw's ability to (1) engage in "rational decision-making" and "structured, organized, and goal-directed behaviors;" (2) communicate both orally and in writing; (3) conform his behavior to social and legal expectations; (4) monitor his emotions in a high stress and high stakes environment; and (5) perform basic cognitive functions necessary to "construct, mount, and modify an effective defense." Christina L. Patton, E. Lea Johnston, Colleen M. Lillard, Michael J. Vitacco, *Legal and Clinical Issues Regarding the Pro Se Defendant: Guidance for Practitioners and Policy Makers*, 25 Psychol., Pub. Policy, and L. 196, 203–04 (2019).

But the court realizes the parties have not yet addressed the precise question they contend the second evaluator should address.  **Therefore, the court directs the parties in this case to file a memorandum within 10 days of the date of this Order.  Each party's filing must state whether it:  agrees with the court's question to the evaluator, takes no position on the subject, or, instead, contends the evaluator should answer a different question using a different standard.**[4]

### B.  Who should conduct this evaluation?

The government's motion assumes that a psychologist (or similarly trained professional) employed by the Bureau of Prisons ("BOP") would conduct the *Edwards* evaluation.  Certainly, this is one reasonable alternative.  After all, BOP psychologists regularly conduct forensic evaluations requested by federal courts.  One of BOP's evaluators already is familiar with Mr. Shiferaw because she has evaluated him under § 4241's standard.  And, pragmatically, BOP's transportation facilities often (but not always) streamline the logistical process of bringing the defendant to the evaluator.  But, in the court's judgment, assigning this second evaluation to a BOP evaluator would present some difficulties.

For instance, an *Edwards* evaluation would involve more invasive questioning than the § 4241.  By definition, it would require inquiry of Mr. Shiferaw's capacity to try a case against a

---

[4]     *Edwards* unquestionably arose in a different procedural setting than this case.  Specifically, *Edwards* considered an appeal from a prosecution and subsequent appellate proceedings in Indiana's state courts.  The narrow version of the question presented in *Edwards* thus asked whether the Constitution of the United States required the *state* court trial judge to allow Edwards to represent himself.  554 U.S. at 169; *see also id.* at 178 ("The Constitution permits *states* to insist upon representation" in circumstances like these. (emphasis added)).

In contrast, this case involves a prosecution in federal court under the laws of the United States.  Does that difference matter?  The Seventh Circuit considered the issue in *Berry* and concluded that it does not.  *See* 565 F.3d at 391–92 (recognizing the "distinction in terms of a federal court's power to block a gray-area defendant's self-representation request," but applying *Edwards* nonetheless to federal court prosecution).

member of the United States Attorney's Office.  It seems a bit odd to ask another wing of the Department of Justice to investigate and prepare a scouting report of sorts about someone who is DOJ's trial adversary.

One might reasonably argue that an *Edwards* evaluation is just a more nuanced version of a § 4241 evaluation.  And while this argument is appealing at a high level, it doesn't withstand closer analysis.  If a defendant fails the standard applied in a § 4241 evaluation, the prosecution stops.  But, with an *Edwards* evaluation, the case will continue in one form or another no matter the outcome.  So, if the evaluation discloses something about Mr. Shiferaw's case theory or trial strategy, it might harm Mr. Shiferaw's interests.[5]

The court is not inclined to embrace the government's approach.  For one thing, the government has not provided any information about BOP's willingness or capacity to involve its evaluators in *Edwards* evaluations.  Also, the government hasn't reported whether it has secured (or, even, started trying to secure) the necessary approvals to engage in this process.  Novel governmental projects don't always move with dispatch.  Both Mr. Shiferaw and his co-defendant have rights under the Speedy Trial Act.

On balance, the court is inclined to utilize a different resource to conduct the *Edwards* evaluation.  In the court's experience with psychologists and psychiatrists involved in criminal cases, there are a number of nearby, well-qualified, and independent professionals who could perform an *Edwards* evaluation.

Eager to move this process (and this case) along, **the court sets a hearing for February 27, 2020 at 9:00 am**.  At this hearing, the government must come prepared to discuss:  (a) its due

---

[5]  The court recognizes it could limit this concern.  For example, the court could require the BOP evaluator to submit her *Edwards* evaluation of Mr. Shiferaw only to the court.  The court then could review the report and redact any unfair disclosures from the version provided to the parties.

diligence about BOP's willingness and capacity to have one of its psychologists conduct an *Edwards* evaluation; (b) whether it opposes appointment of a non-BOP evaluator to conduct the *Edwards* evaluation of Mr. Shiferaw; and (c) whether, if the court elects to appoint an independent evaluator, the government will identify any candidates to conduct such an evaluation.[6]

### C. Conclusion

Given the importance of several unresolved issues, the government's motion (Doc. 59) remains pending. The court will rule it at or following the hearing on February 27, 2020.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the **parties must file a memorandum within 10 days of the date of this Order**. Each party's filing must address whether it agrees with the court's proposed question for the record evaluator, takes no position, or, instead, contends the evaluator should answer a different question using a different standard.

**IT IS FURTHER ORDERED THAT** the court will conduct a hearing on the unresolved aspects of the government's motion **on February 27, 2020, on the 9:00 am docket**. At this hearing, the United States must address (a) its due diligence about BOP's willingness and capacity to have one of its psychologists conduct an *Edwards* evaluation; (b) whether it opposes appointment of a non-BOP evaluator to conduct the *Edwards* evaluation of Mr. Shiferaw; and (c) whether, if the court elects to appoint an independent evaluator, the government will identify any candidates to conduct such an evaluation.

---

[6] The court is mindful that appointment of an independent evaluator would require a source to fund that evaluator's work. The court believes that funding is appropriate under § 220.55.20 of the Guide to Judiciary Policy. *Guide to Judiciary Policy*, U.S. Courts, (last updated Feb. 6, 2019), https://www.uscourts.gov/sites/default/files/vol_07.pdf. This evaluator would occupy a rule somewhat like that of standby counsel for a Criminal Justice Act ("CJA") qualifying defendant who has elected to exercise his *Faretta* right. Mr. Shiferaw has qualified for appointed counsel under the CJA and this evaluation would serve, in part, "to protect the integrity and continuity of the proceedings." *Id.* § 220.55.30.

**IT IS SO ORDERED.**

**Dated this 14th day of February, 2020, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**