IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br><br>MICHAEL SHIFERAW (01),<br><br>      Defendant. | Case No. 19-20025-01-DDC |

MEMORANDUM AND ORDER DECIDING
DEFENDANT'S COMPETENCE TO STAND TRIAL

    Counsel for defendant Michael Shiferaw made an oral motion requesting a psychiatric or psychological examination of his client's competency. *See* Doc. 88. He augmented his request with a written supplement (Doc. 89) filed on August 31, 2020. In general terms, defense counsel asserted that he had "'reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent'" to stand trial. Doc. 89 at 1 (quoting 18 U.S.C. § 4241 (text alteration omitted)). The court found that sufficient cause existed to believe that the defendant might suffer a mental disease or defect to render him incompetent and it thus granted defense counsel's oral motion. Doc. 92.

    The unusual aspect of this decision was that it ordered the third examination of Mr. Shiferaw. *Id.* at 1.[1] The United States responded to the Order by arranging Mr. Shiferaw's

---

[1] Both the first (August 2019, Doc. 39) and third (February 2021, Doc. 112) examinations examined Mr. Shiferaw's competence for the proceedings to continue under the standard adopted in § 4241. The second examination (June 2020, Doc. 84) evaluated Mr. Shiferaw's mental competence to represent himself at trial—a right he once asserted in this case. *See* Doc. 62 (citing *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008) (permitting trial judges "to take realistic account of [a defendant's] mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so")).

transfer to the Metropolitan Correctional Center in Chicago where Psychologist David M. Szyhowski examined him. Dr. Szyhowski's written report summarizing his findings about the defendant is dated February 2, 2021, and it is Doc. 112 in the case. After reciting the governing legal standard—Does defendant suffer from a severe mental disease or defect, the result of which he is unable to understand the legal proceedings or to properly assist in his defense?—Dr. Szyhowski concluded the following about Mr. Shiferaw: "His competency related abilities do not appear to be compromised by a severe mental disease or defect at this time." Doc. 112 at 12–13. But Mr. Shiferaw, as was his right, chose to contest Dr. Szyhowski's findings and asked the court to schedule an in-person evidentiary hearing. Doc. 111. The court set that hearing on the schedule requested by counsel and on April 2 and April 16, 2021, the court heard evidence. Three witnesses testified over those two days: Dr. Szyhowski, Dr. Jaime Jauregui (a forensic psychologist who conducted the first two evaluations of Mr. Shiferaw), and Mr. Shiferaw himself. The court then took the matter under advisement.

This Order now decides the question that defendant chose to contest: Is he competent for legal proceedings to continue against him? The next two sections address the legal standard governing the question and a threshold issue. A third section applies those standards to the evidence adduced at the competency hearing. For reasons explained in this Order, the court concludes that Mr. Shiferaw is competent to stand trial.

I. **SUBSTANTIVE STANDARD**

The parties generally agree about the substantive standard governing the question. As the defendant explained in his prehearing brief, statutory and constitutional considerations are in play.

The Fifth Amendment's Due Process Clause requires a criminal defendant to be mentally competent before he can stand trial. *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975). This requirement means the court must decide whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether the defendant has a rational and factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960); *United States v. Boigegrain*, 155 F.3d 1181, 1189 (10th Cir. 1998).

Congress adopted a similar statutory standard in 18 U.S.C. § 4241(d). It provides, "If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court must "commit the defendant to the custody of the Attorney General." *Id.* The statute mandates the Attorney General hospitalize the defendant in a suitable treatment facility. *Id.* In the absence of such findings, however, the case against the defendant continues.

## II.     BURDEN OF PROOF

The parties agree that the preponderance of evidence standard applies to the competence determination. *See* Doc. 124 (Defendant's Pre-Competency Hearing Briefing) at 3 ("The statute charges the district court to make its findings by a preponderance of the evidence. Tenth Circuit caselaw supports the use of this burden of proof.") & Doc. 123 (Government's Briefing Regarding Competency Hearing) at 2 ("If the court finds by a preponderance of the evidence that the defendant is suffering from a mental disease or defect . . . ."). But they disagree about who must shoulder that burden of proof.

Does the government bear the burden to prove defendant is competent? Or does the defendant bear the burden to prove that he isn't? As one might predict, the defendant claims it's the former. The government claims it's the latter. Several of the Circuits have responded to the question, but not with the same answer. *Compare United States v. Izquierdo*, 448 F.3d 1269, 1276–77 (11th Cir. 2006) (burden "arguably" rests with "the party making a motion to determine competency"); *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991) (government's burden); *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989) ("Government has the burden to prove the defendant's competency"); *United States v. Makris*, 535 F.2d 899, 906 (5th Cir. 1976) ("no question" that government bears the burden to prove defendant competent). As fate would have it, our Circuit hasn't reached the question. But a district court within the Tenth Circuit has addressed the question, *United States v. Veatch*, 842 F. Supp. 480, 482 (W.D. Okla. 1993). There, the district court held that absent any contrary indications, defendant's competence is presumed. *Id.* But once competence is called into question, the burden rests with the government. *Id.* Defendant urges the court to embrace this approach. Doc. 124 at 4–5.[2]

While this question is an interesting one, the court need not answer it to decide the question presented by Mr. Shiferaw's case. Both iterations of the issue produce a favorable result for the government. If the government indeed bears the burden to prove competency, it has sustained that burden. And if Mr. Shiferaw must shoulder the burden to show incompetency, he has failed to do so. The next section explains the reasons for this conclusion.

---

[2] Neither party cites the following sentence from *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996): "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Id*. (citing 18 U.S.C. § 4241). Perhaps they view the court's observation as dictum, as some courts do. *See United States v. Gomez-Guilian*, No. CR 08-698-PHX-DGC, 2010 WL 749643, at *1 n.1 (D. Ariz. Mar. 3, 2010) (statement about burden in *Cooper* "made in passing, without analysis of § 4241(d)").

### III.	IS MR. SHIFERAW COMPETENT TO STAND TRIAL?

The analysis begins by narrowing the issue the court must decide.  The competency standard generally requires courts to answer two questions:  Does defendant have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding?  And does defendant have a rational and factual understanding of the proceedings against him?  *Dusky*, 362 U.S. at 402.  But here, both parties agree that Mr. Shiferaw understands the proceedings against him.[3]  Consequently, the court need only decide whether Mr. Shiferaw currently possesses sufficient ability to consult with his attorney with a reasonable degree of rational understanding.

#### A.	Does Mr. Shiferaw currently have sufficient ability to consult with his lawyer with a reasonable degree of rational understanding?

Dr. Szyhowski opined that Mr. Shiferaw has the ability to consult with his attorney and assist in his defense, and the court finds that he credibly and persuasively explained the reasons for his conclusion.  As Dr. Szyhowski's report explains, "Mr. Shiferaw appears to have a firm grasp on the concept of working cooperatively with an attorney."  Doc. 112 (Gov't Ex. 3) at 8.  Mr. Shiferaw explained how and why he disagrees with his trial counsel about some aspects of the case, *id.*, and accurately identified some tasks his counsel should undertake to advise him

---

[3]	The evidentiary record explains why the parties agree that defendant understands the current legal proceedings.  Dr. Szyhowski's evaluation found that Mr. Shiferaw "displayed sound factual understanding of the current legal proceedings."  Doc. 112 at 7 (also admitted as Government's Exhibit 3 during the competency hearing).  And his report credibly recites the basis for this conclusion.  Mr. Shiferaw accurately described:  (a) the charges and penalties he faces; (b) the difference between consecutive and concurrent sentences; (c) how the adversary system works in criminal trials; and (d) the varying roles played by the prosecutor, his defense lawyer, the judge, and the jury.  *Id*.  He also identified, albeit in somewhat unsophisticated terms, the pros and cons of representing himself vs. allowing an experienced attorney to conduct his defense.  *Id.* at 7–9.

Mr. Shiferaw's first evaluator—Dr. Jauregui—reached the same conclusion in 2019.  *See* Doc. 39 at 9 ("Mr. Shiferaw exhibited a good understanding of the criminal charges and general court proceedings. . . . [He] was knowledgeable and demonstrated a simple but fair understanding of the general duties of court personnel and courtroom procedures.").

properly and prepare for trial, *id*.  "When the defendant was asked what he believed an attorney should be doing to represent their client [Mr. Shiferaw] stated, 'Look at my discovery.'  Mr. Shiferaw stated he has not seen his discovery yet, so he does not know if his attorney has reviewed it.  He added that an attorney should, 'Show what happened.'"  *Id.*  Mr. Shiferaw also expressed a capacity to understand that he doesn't have the same skills as a trained attorney.  *Id.* at 9.  He did express some unrealistic ideas—that music celebrities might be willing to intercede and help him in his criminal case.  But he also displayed flexibility and the capacity to evaluate his own ideas, criticizing, after reflection, that intercession by celebrities wasn't likely to help him.  *Id.*  The court finds Dr. Szyhowski's opinions credible and well-grounded in facts.

Also, Dr. Szyhowski's conclusion comports with one reached in an earlier evaluation of Mr. Shiferaw.  Dr. Jauregui's 2019 evaluation of Mr. Shiferaw concluded that he was "immature, impressionable, easily distracted, and has cognitive deficits."  Doc. 39 (admitted as Gov't Ex. 1 during the competency hearing) at 10.  But, Dr. Jauregui concluded, these "symptoms **do not** substantially impair his present ability to understand the nature of the court proceedings brought against him, or substantially impair his ability to properly assist counsel in a defense."  *Id.* (emphasis in original).

In contrast to this evidence supporting the government's position, Mr. Shiferaw's attorney adduced no opinion from a qualified professional, or anyone else, suggesting that the defendant currently lacks sufficient ability to consult with his counsel with a reasonable degree of rational understanding.  But, his counsel did weave a creative argument based on conditions diagnosed by Dr. Jauregui and Dr. Szyhowski.  This argument contends that Dr. Szyhowski diagnosed Mr. Shiferaw with borderline intellectual functioning, ADHD, and Schizotypal Personality Disorder.  Doc. 112 (Gov't Ex. 3) at 10–11.  The combination of these three

disorders, defense counsel argues, conspire against Mr. Shiferaw's competency to proceed. Specifically, counsel argues that defendant's Schizotypal Personality Disorder—one of Dr. Syzhowski's diagnoses—creates suspicion and paranoid ideation. Counsel's theory continued: Mr. Shiferaw's conditions lead him to believe that counsel does not represent his best interests and he thus distrusts counsel. Mr. Shiferaw is willing to trust a lawyer only if the lawyer does exactly what he wants. Defense counsel argues that Mr. Shiferaw's understanding is "concrete" and he can't operate with a fluid understanding of how the facts interact with the law, so he can't weigh the likelihood that he could win the trial. And if he can't weigh his chances at trial, then he can't meaningfully evaluate a plea offer. Defense counsel then closed his argument with the conclusion reached by Mr. Shiferaw's second evaluation, *i.e.*, that Mr. Shiferaw isn't competent to represent himself at trial. *See* Doc. 84 (Gov't Ex. 2) at 7.[4] And thus, defense counsel contends, Mr. Shiferaw's conditions force him to proceed pro se and he's not competent to do so.

While the court admires the creativity of defense counsel's argument, it suffers from a glaring shortcoming: There's no evidence to support it. Two psychologists testified at Mr. Shiferaw's competency hearing. Both were familiar with Mr. Shiferaw and they independently diagnosed his conditions. Defense counsel examined both experts at length and neither one embraced defendant's theory. Instead, both psychologists determined Mr. Shiferaw's conditions do not impair his competency to participate in his defense. *See* Doc. 112 (Gov't Ex. 3) at 13 (Dr. Syzhowski concluded Mr. Shiferaw's "capacity to participate in his defense does not appear impaired by a severe mental illness."); *see also* Doc. 39 (Gov't Ex. 1) at 10 (Dr. Jauregui

---

[4] Specifically, Dr. Jauregui's second evaluation addresses whether Mr. Shiferaw "suffers from a severe form of mental illness or cognitive impairment such that he is not competent to conduct trial proceedings by himself." Doc. 84 at 1. *See Indiana v. Edwards*, 554 U.S. at 177–78.

concluded Mr. Shiferaw's symptoms do not "substantially impair his ability to properly assist counsel in a defense.").

Finally, the direct evidence about Mr. Shiferaw's conditions rejects this theory. *See United States v. DeShazer*, 554 F.3d 1281, 1286 (10th Cir. 2009) ("When assessing a defendant's competence, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." (internal quotation marks omitted)). Mr. Shiferaw elected to testify at the competency hearing. The court asked Mr. Shiferaw whether he had discussed his right to testify at the hearing with his attorney to which he answered affirmatively. The court also asked if he had discussed whether he should testify at the hearing with his attorney. And Mr. Shiferaw answered yes. Mr. Shiferaw answered the court's questions directly and clearly. When the court questioned Mr. Shiferaw, he expressed an understanding of the proceeding and how to conduct himself appropriately with no signs of confusion. During the competency hearing, the government questioned Mr. Shiferaw about his interview with law enforcement on the night of his arrest. During that interview, Mr. Shiferaw stated that he understood his *Miranda* Rights and that he knew he had the right to remain silent during the interview. He signed a card waiving his right to remain silent and spoke with law enforcement without an attorney. After speaking with law enforcement for a while, Mr. Shiferaw invoked his right to consult with an attorney and ended the interview. Mr. Shiferaw's ability to rescind his decision to participate in the interview with law enforcement revealed his capacity to make the kind of evaluations defense counsel argues he cannot make. Mr. Shiferaw also expressed an understanding of the role of his defense counsel and agreed he had the ability to consult with his attorney if he chose to.

To be sure, the court is persuaded that Mr. Shiferaw has a limited intellectual reach. Dr. Szyhowski applied the Beta-4 intelligence metric that he described as, "an individually administered assessment designed to estimate global intellectual abilities." Doc. 112 (Gov't Ex. 3) at 6–7. Mr. Shiferaw scored the equivalent of 77, "which suggests he is functioning in the Borderline range of intellectual ability." *Id.* at 7. This score "is equivalent to the WAIS-IV Full Scale Equivalent of 74" that Dr. Jauregui's testing of Mr. Shiferaw produced in 2019. *Id.* (referencing Doc. 39 (Gov't Ex. 1) at 6). This score places Mr. Shiferaw in the fourth percentile of the adult population.

Courts have concluded that similar scores did not preclude a finding of competence. For instance, in *United States v. Robinson*, 404 F.3d 850 (4th Cir. 2005), the defendant was diagnosed with a "borderline functional" IQ (tested at 70) and Schizotypal Personality Disorder—two diagnoses also presented by Mr. Shiferaw. *Id.* at 856–57. The district court found him competent to stand trial and after he was convicted, defendant appealed. *Id.* at 856. The Fourth Circuit affirmed his conviction, finding that the district court had not clearly erred when it made its competency finding. *Id.* at 857. The Circuit noted that some of defendant's test scores "indicate[d] a low intellectual ability," *id.*, that low level "does not, however, undermine [the expert's] ultimate conclusion that [defendant] was competent[,]" *id.*[5]

*United States v. Doshier* is similar. No. CR-09-42-RAW, 2009 WL 2230789 (E.D. Okla. 2009). There, defendant's full-scale IQ was 77—the same as Mr. Shiferaw's BETA-IV score— but the magistrate judge found him competent to stand trial. 2009 WL 22303789, at *2–3. The court noted that defendant had displayed capabilities "notwithstanding his cognitive limitations."

---

[5] The Fourth Circuit also refused to limit the expert's evaluation to his juvenile years, noting that the expert had concluded the defendant was competent to proceed as an adult in federal district court. *Robinson*, 404 F.3d at 857–58.

*Id.* at *2.  For example, he drove himself to work and maintained employment for many years at a Walmart.  *Id.*  He also "operate[d] his own personal computer" and served as a babysitter for one relative.  *Id.*

Mr. Shiferaw presents much of the same work history as *Doshier*'s defendant.  Mr. Shiferaw told Dr. Jauregui that he had worked at Freddy's Frozen Custard (as a dishwasher), Walmart (lawn-and-garden department and stocking shelves), McDonald's, and in an Aldi warehouse (as a janitor).  Doc. 39 at 4.  Mr. Shiferaw reported that he had saved money from his jobs, "purchas[ing] his own studio equipment to begin working on his music in his spare time" and "'dropped' his first 'mix-tape' entitled *Dikayah's Beginning* in March 2016."  *Id.*  He secured his driving permit at age 17, passing the written exam after failing it twice.  *Id.*  Also, Mr. Shiferaw has displayed a capacity for guile.  During his stay in San Diego's correctional center, he asked the other participant in a telephone call to "reach out to Kanye West who could in turn contact Donald Trump because the President had released 3000 inmates[,]" and Mr. Shiferaw speculated that "'maybe he can free me too.'"  *Id.* at 5.  When the conversation's other participant expressed skepticism about Mr. Shiferaw's idea, he suggested an alternative: "They're saying the El Paso shooter had mental illness . . . maybe that can work for me too."  *Id.*

The court's experience with Mr. Shiferaw, though more limited than that of Dr. Szyhowski and Dr. Jauregui, is consistent with their observations and conclusions.  The court has interacted with Mr. Shiferaw during several court hearings, including colloquies about his decision to represent himself and then, later, his decision to rescind his self-representation right.  Mr. Shiferaw appeared to understand the court's questions and usually responded to them in appropriate fashion.  And while the court disagreed with his original decision to represent

10

himself at trial, the court found that Mr. Shiferaw displayed an understanding of the court's questions and generally provided rational—if ill-advised—answers.

> **B.     Applying these findings to the governing legal standard, the court concludes that Mr. Shiferaw is competent to stand trial.**

Competency issues "can raise issues of both substantive and procedural due process." *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1232 (10th Cir. 2009). The court has complied with the procedural component of this right, ordering "an initial psychiatric examination." *Id.* at 1234. Also, exercising its discretion, *id.*, the court ordered a second examination to assess defendant's capacity to represent himself at trial (as he had requested to do). And then, after Mr. Shiferaw changed his mind about representing himself, the court reappointed counsel and counsel asserted he had observed "reasonable cause" to believe that Mr. Shiferaw was mentally incompetent, *see* 18 U.S.C. § 4241(a), so the court ordered a third examination. When that third examination opined that Mr. Shiferaw was competent, the court provided defense counsel with "an opportunity to supplement the record[,]" conducting an evidentiary hearing under § 4247(d) (where defendant invoked his statutory right to testify). Finally, the court has considered its own "observations of the defendant's comportment[,]" a consideration deemed appropriate by our Circuit. *United States v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001).

Considering the evidence and all other relevant information, the court concludes that the government has discharged its burden to demonstrate that Mr. Shiferaw is competent for this action to proceed. The court finds that the government has demonstrated that Mr. Shiferaw "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Cooper*, 517 U.S. at 354 (quoted in *United States v. Osborn*, 664 F. App'x 708, 712 (10th Cir. 2016)). Given the parties' agreement that Mr. Shiferaw possesses "a rational as

well as factual understanding of the proceedings against him[,]" the court's finding renders Mr. Shiferaw competent for these legal proceedings to continue. And to the extent that defendant bears any of the burden to prove that he is incompetent, he has utterly failed to carry it. *See Cooper*, 517 U.S. at 362 ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

IV. **CONCLUSION**

Michael W. Shiferaw presently is competent for this criminal proceeding to continue.

**IT IS SO ORDERED.**

**Dated this 1st day of June, 2021, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**